UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BIANCA FRANCIS,

     Plaintiff,

v.                                 Case No: 5:25-cv-560-WFJ-PRL

NAVY FEDERAL CREDIT UNION
and EQUIFAX INFORMATION
SERVICES, LLC,

     Defendants.

_____/

## ORDER

Before the Court is Defendant Equifax Information Services LLC's

("Equifax") Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 36),

and Plaintiff's response (Dkt. 42).  After careful consideration of the allegations of

the Second Amended Complaint (Dkt. 34), the submissions of the parties, and the

applicable law, the Court concludes the motion is due to be granted with leave to

amend the complaint one last time.

## BACKGROUND

Plaintiff Bianca Francis sues Equifax Information Services, LLC

("Equifax") as a consumer reporting agency ("CRA") for violations of the Fair

Credit Reporting Act ("FCRA"), specifically 15 U.S.C. §§ 1681e(b) and1681i(a).

Dkt. 34.[1]  Seeking actual and punitive damages, Plaintiff claims her reputation has been damaged, her FICO scores lowered, and credit has been denied or if granted, only with higher interest rates imposed.  Plaintiff identifies two accounts: a single NFCU tradeline, and one account with Lead Bank.  In October 2024, Equifax allegedly published inaccurate charge off notations and incorrect account balances concerning both accounts to third parties, specifically Comcast.  *Id.* ¶¶ 30, 31.

Plaintiff discovered in March 2025 that the NFCU account was reporting an inaccurate balance of $2,690.  *Id.* ¶ 10.  In April 2025, Plaintiff disputed the NFCU account with Equifax.  *Id.* ¶ 11.  Equifax sent the dispute to NFCU for reinvestigation, and NFCU verified to Equifax the account balance as accurate.  *Id.* ¶¶ 14, 15.  In September 2025, Plaintiff "was told by one of [NFCU's] agents that the debt was no longer owned by NFCU" because the NFCU debt had been sold to another entity—a debt collector.  *Id.* ¶¶ 16, 18.  Plaintiff claims that Equifax failed to remove NFCU as the current owner and to show the identity of the purchaser, thereby improperly disregarding the "Metro 2 Format, which governs the standardized data fields used by furnishers and credit reporting agencies."  *Id.* ¶ 17.  Plaintiff faults both Equifax and NFCU for "continu[ing] to report the [NFCU] account inaccurately by [using] repeated charge-off notations . . . well beyond the

---

[1] Plaintiff brings only one claim against Navy Federal Credit Union ("NFCU") as a furnisher of consumer information for violations of § 1681s-2(b)(1)(A) of the FCRA.

original date of charge-off." *Id.* ¶ 20.  This repeated incorrect reporting of a balance and "misrepresenting the account status" created "the appearance [of] on-going derogatory events." *Id.*

As to the Lead Bank account, Plaintiff asserts that Equifax was reporting an incorrect balance of $151 and "an inaccurate payment history reflecting missed payments that did not occur." *Id.* ¶ 23.  Plaintiff submitted these disputes to Equifax in April 2025.  *Id.* ¶¶ 23, 24.  Plaintiff alleges that "upon information and belief," Equifax sent the disputes to Lead Bank for reinvestigation and that Lead Bank verified the information as accurate.  *Id.* ¶¶ 24, 25.  When Plaintiff sent a "Notice of Intent to Sue" to Lead Bank in August 2025, however, Lead Bank responded by email "stating that they are not able to locate an account or information regarding a dispute from Equifax for the Plaintiff."  *Id.* ¶ 27.  Plaintiff concludes that Equifax must have failed to forward Plaintiff's dispute to Lead Bank, which undoubtedly amounts to a failure to conduct a reasonable investigation.  *Id.* ¶ 28.

Plaintiff's second claim seeks relief from Equifax under 15 U.S.C. § 1681e(b) for inaccurate credit reports.  *Id.* ¶¶ 47–59.  The remaining claims against Equifax (third through seventh) assert violations of 15 U.S.C. §§ 1681i(a)(2), (4), (5), (6)(B)(iii), and (7), concerning reinvestigation of disputed information.  *Id.* ¶¶ 60–94.  Equifax moves to dismiss all claims.

## LEGAL STANDARD

A complaint survives dismissal under Federal Rule of Civil Procedure 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations need not be detailed, but the plaintiff is still required to provide more than mere labels or conclusions, and the facts must plausibly lay the grounds for an entitlement to relief.  *Twombly*, 550 U.S. at 555.  The court must accept the facts, not conclusions, as true and view them in the light most favorable to the nonmoving party.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although *pro se* pleadings must be liberally construed, the court may not act as *de facto* counsel or rewrite a deficient pleading to sustain an action.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998); *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Iqbal*, 556 U.S. 662.

## DISCUSSION

Before reaching the substantive arguments made in Equifax's motion to dismiss, the Court *sua sponte* addresses the structure of the Second Amended Complaint.  The first and most common type of improper shotgun pleading is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and

the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).  In contravention of *Weiland*, Plaintiff wholly incorporates all preceding paragraphs in each of the second through seventh claims against Equifax.  *See* Dkt. 34 ¶¶ 47, 60, 74, 85, 90 (each stating "Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein").  This practice makes it "exceedingly difficult, if not impossible, to know which allegations pertain to that count . . . [and] unnecessarily tax[es] the time and resources of the District Court as well as the Court of Appeals." *Smith v. DeKalb Cnty., Ga.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2013).

On repleading, Plaintiff must avoid whole incorporation of confusing and irrelevant paragraphs into each count or claim and refer only to factual allegations pertinent to the particular claim being pled.  Apart from its form, the Second Amended Complaint's factual allegations are taken as true and construed in the light most favorable to Plaintiff.  Equifax has raised the following grounds for dismissal.

### *Inaccurate credit reports—§ 1681e(b)*

The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).  "Maximum possible accuracy" means that

the "information must be factually true and also unlikely to lead to a misunderstanding." *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1252 (11th Cir. 2020). A CRA has not met this standard if the report is factually incorrect, objectively likely to mislead its intended user, or both. *Id.*

A plaintiff bringing a claim under § 1681e(b) must allege that 1) the CRA's report contained factually inaccurate information, 2) the procedures it took to assure maximum possible accuracy were not reasonable in the CRA's preparation and distribution of the report, and 3) the plaintiff suffered damages as a result of injuries caused by the CRA's failure to follow the reasonable procedures. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (citations omitted); *Rhodes v. First Advantage Background Servs. Corp.*, No. 24-11005, 2024 WL 4615775, at *4 (11th Cir. Oct. 30, 2024) (citing *Losch*); *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1335–36 (S.D. Fla. 2011) (citations omitted). To establish liability under § 1681e(b), the plaintiff must also plead that the CRA furnished or published the consumer report to a third party.[2] *Collins v.*

---

[2] In contrast, claims brought under § 1681i(a), as the third through seventh claims here, do not require publication. *Collins v. Experian Info. Sols., Inc.,* 775 F.3d 1330, 1335 (11th Cir. 2015) (holding that the "plain language of the FCRA contains no requirement that the disputed information be published to a third party in order for a consumer to recover actual damages under 1681i(a)").

*Experian Info. Sols., Inc.*, 775 F.3d 1330, 1335 n.4 (11th Cir. 2015); *Lazarre*, 780 F. Supp. 2d at 1335–36.[3]

Inaccurate information alone does not impose strict liability on consumer reporting agencies. *Williams v. First Advantage LNS Screening Sols., Inc.*, 947 F.3d 735, 745 (11th Cir. 2020) (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991), *superseded by statute on other grounds*, *Santos v. Healthcare Revenue Recovery Grp., LLC*, 90 F.4th 1144, 1156 (11th Cir. 2024)).  A CRA "can escape liability if it establishes that an inaccurate report was generated following reasonable procedures, which is generally a jury question." *Rumbough v. Experian Info. Sols., Inc.*, No. 6:16-cv-1305-Orl-18GJK, 2018 WL 10455201, at *3 (M.D. Fla. Feb. 14, 2018) (quoting *Jackson v. Equifax Info. Servs., LLC*, 167 F. App'x 144, 146 (11th Cir. 2006)).

Equifax argues that Plaintiff has failed to allege an inaccuracy under § 1681e(b).  The Court agrees.

Plaintiff alleges that after NFCU marked her account as charged off on her credit file, Equifax improperly continued to notate the tradeline with a "CO or L" each month thereafter.  *See* Dkt. 34 ¶ 20.  The continued notations on her report "well beyond the original date of charge-off" created "the appearance of on-going

---

[3] *See also Bermudez v. Equifax Info. Servs., LLC*, No. 6:07-cv-1492-Orl-31GJK, 2008 WL 5235161, at *2 (M.D. Fla. Dec. 15, 2008) (citing *Enwonwu v. Trans Union, LLC*, 164 F. App'x 914 (11th Cir. 2006)).

derogatory events." *Id.*  In addition to the repeated charge-offs, Plaintiff contends that the "Sold-To" field in the report should not have been left blank when, in fact, the debt was sold to Apelles, a third-party debt collector, as "Metro 2 formatting requires identification of the purchaser and transfer status." *Id.* ¶ 48.  Finally, Equifax failed to mark either the NFCU or the Lead Bank tradeline as "disputed by consumer" after receiving Plaintiff's written dispute.  *Id.*

These allegations, collectively or alone, do not support a claim for reporting inaccuracies.  To "charge off" means "[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt."  *Black's Law Dictionary* (12th ed. 2024).[4]  "Federal regulations require banks to 'charge off' debt that is past due by over 180 days."  *In re Anderson*, 884 F.3d 382, 386 n.2 (2d Cir. 2018) (citation omitted); *Lantos v. Equifax Information Servs., LLC*, No. 2:23-cv-240-LEW, 2024 WL 778819, at *3 (D. Me. Feb. 26, 2024) (quoting *Anderson*). The charge-off acts to prevent over-valuing the account's worth as an asset. *Lantos*, 2024 WL 778819, at *3 (citing *Makela v. Experian Info. Sols., Inc.*, No.

---

[4] According to Equifax, "a charge-off means the lender or creditor has written the account off as a loss, and the account is closed to future charges. It may be sold to a debt buyer or transferred to a collection agency. . . . You're still legally obligated to pay the debt. If the debt is sold to a debt buyer or transferred to a collection agency, it may appear twice on credit reports – once from the original creditor and once from the collection agency or debt buyer." *See* https://www.equifax.com/personal/education/credit/report/articles/-/learn/charge-offs-faq/ last checked May 27, 2026.

6:21-cv-386-MC, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) and other authorities).

Although a debt can be "written off," a charged off debt is not necessarily forgiven and "may then be sold to a collection agency for further efforts toward satisfaction." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010). Per Plaintiff's own allegations, the NFCU debt was transferred or sold to "Apelles, a third-party debt collector." Dkt. 34 ¶¶ 48, 53. Such an action is contemplated as a means of the original creditor recouping its losses. *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297–98 (11th Cir. 2016) ("Once a debt has been charged off, . . . the original creditor may choose to sell the debt to a third-party purchaser (a 'debt buyer') at a discounted price based on the reduced likelihood of collection.").[5]

A CRA may "retain a charged off notation for a debt on a consumer's credit report for up to seven years." *Makela*, 2021 WL 5149699, at *3; 15 U.S.C. § 1681c(a)(4) ("[N]o consumer reporting agency may make any consumer report containing . . . [a]ccounts placed for collection or charged to profit and loss which antedate the report by more than seven years."); *Lantos*, 2024 WL 778819, at *3 (citing *Makela* and § 1681c). Most courts conclude that reporting charge offs for

---

[5] This Court relied on *Hinkle* in a recent FCRA case: *Bey v. TransUnion, LLC*, No. 8:25-cv-2848-WFJ-AAS, 2026 WL 503328, at *5 (M.D. Fla. Feb. 24, 2026).

consecutive months is "neither inaccurate nor misleading." *Craigg v. Bank of Am. Corp.*, No. 1:24-cv-88-SEG-JKL, 2024 WL 1957354 (N.D. Ga. Mar. 21, 2024) (collecting cases), *report and recommendation adopted*, 2024 WL 4251905 (N.D. Ga. Aug. 20, 2024).  This Court finds this reasoning persuasive.  Consequently, the Second Amended Complaint does not allege facts supporting an incorrect usage of the charge off notations.

As another means of alleging inaccuracy, Plaintiff asserts that Equifax deviated from the Metro 2 formatting guidelines promulgated by the Consumer Data Industry Association ("CDIA") by failing to denote who the debt was sold to and that the account was disputed.  *See* Dkt. 34 ¶ 48.  Courts have held in the context of the FCRA that "failure to comply with CDIA guidelines does not render the report incorrect." *Mortimer v. Bank of Am., N.A.*, No. C-12-1959-JCS, 2013 WL 1501452, at *12 (N.D. Cal. Apr. 10, 2013) (noting that plaintiff failed to plead any basis indicating that "any entity would have expected Defendant to report in compliance with the CDIA guidelines"); *Mestayer v. Experian Info. Sols., Inc.*, No. 15-cv-3645-EMC, 2016 WL 631980, at *4 (N.D. Cal. Feb. 17, 2016) (noting that plaintiff failed to cite any authority suggesting that failure to comply with industry standard is the same as failure to comply with law).  In other words, *Mortimer* and *Mestayer* lend support for the "proposition that a debt collector's failure to comply with industry practices does not equate to a violation of the law." *Dash v. Midland*

*Funding LLC*, No. 8:16-cv-2128-T-36AAS, 2017 WL 841116, at \*3 (M.D. Fla. Mar. 3, 2017) (dismissing complaint for FDCPA violations and relying on *Mortimer* and *Mestayer*).  The Court finds that leaving the "sold to" box blank, as alleged in the Second Amended Complaint, does not suggest a violation of the FCRA.

Other than the Metro 2 formatting and charge off notations, the only possible allegations of inaccuracies include 1) the incorrect balance of $151 together with false "missed payments" showing on the Lead Bank account, and 2) the incorrect balance of $2,690 for the NFCU account.  These conclusions provide no insight into whether these balances were more than or less than the correct balances, and what were the correct balances, and did these reported balances mislead any third party.  Without more, Plaintiff fails to allege sufficient facts to conclude these balances are inaccurate.

Apart from the conclusory inaccuracies, Plaintiff fails to allege any facts pertaining to what reasonable procedures Equifax did not follow to ensure the accuracy of the consumer report.  *See Lazarre*, 780 F. Supp. 2d at 1329.  Nor does Plaintiff allege how Equifax did not establish the required reasonable procedures in the preparation and publishing of the report.[6]

---

[6] The failure to allege the third element of a claim under § 1681e(b)—damages—will be discussed at the end of this Order.

For these reasons, the first claim for relief in the Second Amended Complaint is dismissed. Plaintiff will be given one more opportunity to amend.

### *Failure to respond or to conduct reasonable reinvestigation—§ 1681i*

If the consumer disputes the completeness or accuracy of the information in the consumer file, the agency "shall . . . conduct a *reasonable reinvestigation* to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). To state a claim under § 1681i, Plaintiff must plead that 1) her consumer file contained inaccurate or incomplete information, 2) she notified Equifax of the alleged inaccuracy, 3) her dispute is not frivolous, 4) Equifax failed to respond or to conduct a reasonable reinvestigation of the disputed item, and 5) Plaintiff sustained damages caused by Equifax's failure to reinvestigate. *Steed v. Equifax Info. Servs., LLC*, No. 1:14-cv-437-SCJ-CMS, 2016 WL 7888040, at *11 (N.D. Ga. July 15, 2016) (citing *Lazarre*, 780 F. Supp. 2d at 1334), *report and recommendation adopted,* 2026 WL 7888038 (N.D. Ga. Aug. 31, 2016); *Bermudez*, 2008 WL 5235161, at *4.

The elements of a claim for damages under § 1681i(a) are the same as § 1681e(b) except that the consumer "file" under § 1681i (as opposed to "report" under § 1681e(b)) need not be prepared and distributed by the agency to third parties. *Losch*, 995 F.3d at 944 (citing *Collins*, 775 F.3d at 1335). Notwithstanding this difference, both sections require a showing that the

information in either the report or the file is inaccurate—factually false, likely to mislead, or both. Additionally, both share the element of demonstrating the procedures—preparation of the report in § 1681e(b) or reinvestigation of the "file" in § 1681i—are not reasonable. *Losch*, 995 F.3d at 944.

As set forth above, Plaintiff has failed to allege inaccuracies and to set forth what reasonable procedures, or reasonable reinvestigations, were not followed or performed. In addition to these arguments, Equifax contends that Plaintiff has failed to specify what Equifax did or did not do following the dispute submissions for both the NFCU and Lead Bank accounts. The allegations are particularly stark concerning the Lead Bank account after Plaintiff submitted disputes to Equifax. *See* Dkt. 34 ¶23 (inaccuracies pertained to purported balance of $151 and "payment history reflecting missed payments that did not occur"); *see* Dkt 36 at 9 (citing same). Without more, Plaintiff fails to articulate what inaccuracies form the basis of her § 1681i claims. *See Barreto v. Equifax Info. Servs, LLC*, No. 1:22-cv-4941-VMC-RDC, 2023 WL 4047693, at *4 (N.D. Ga. May 25, 2023), *report and recommendation adopted*, 2023 WL 4996555 (N.D. Ga. July 19, 2023); *Hawkins v. Equifax Info. Servs.*, No. 1:22-cv-1381-LMM-JCF, 2023 WL 4048689 (N.D. Ga.

Apr. 20, 2023), *report and recommendation adopted*, 2023 WL 4049282 (N.D. May 11, 2023).[7]

### *Damages under §§ 1681e(b) and 1681i*

Equifax argues that the allegations are insufficient concerning damages and must be repleaded. The Court agrees. Plaintiff alleges in conclusory fashion that she suffered actual damages under § 1681e(b) "including loss of credit opportunities, lowered credit score, reputational harm, emotional distress, and time expended attempting to correct the inaccuracies." Dkt. 34 ¶ 55. As to § 1681i, Plaintiff repeats her damages include "credit denials, reputational harm, emotional distress, and time and expense spent pursuing corrections that Equifax was legally obligated to make." *Id.* ¶ 67; *see also* ¶ 70 ("Equifax has caused . . . mental and emotional distress, . . . "). Plaintiff continues throughout the operative complaint with hollow allegations concerning damages: "Equifax has caused . . . mental and emotional distress, damage to credit rating, and [other] damages to Plaintiff." *Id.* ¶¶ 57, 76, 82, 87, 92. As this Court has determined before, vague allegations that the plaintiff has suffered "emotional distress" based on the CRA's preparation procedures and reinvestigations do not satisfy the *Twombly* and *Iqbal* standard.

---

[7] *See also Smith v. Equifax, Inc.*, No. 1:25-cv-4009-TRJ-CMS, 2025 WL 3908487, at *4 (N.D. Ga. Nov. 5, 2025) (dismissing complaint for failure to allege sufficient facts and citing *Barreto* and *Hawkins*), *report and recommendation adopted*, 2026 WL 852182 (N.D. Ga. Mar. 11, 2026). *Lawrence v. TransUnion, LLC*, No. 1:25-cv-5515-MHC-CMS, 2026 WL 790876, at *5, 6 (N.D. Ga. Feb. 17, 2026) (dismissing complaint for failure to allege sufficient facts and citing *Barreto* and *Hawkins*).

*See Bey v. TransUnion LLC*, No. 8:25-cv-2848-WFJ-AAS, 2026 WL 503328, at

*3, 5 (M.D. Fla. Feb. 24, 2026).

Upon repleading, Plaintiff must state how any failure to comply on the part

of Equifax caused her damages and what damages resulted.  This applies to both

actual and punitive damages.

## CONCLUSION

Accordingly, Equifax's motion to dismiss (Dkt. 36) is granted.  The Second

Amended Complaint is dismissed without prejudice.  Plaintiff will be given one

last opportunity to amend.  Any Third Amended Complaint must include the

specific inaccurate or incomplete information reported by Equifax and to whom

Equifax reported these inaccuracies if in addition to Comcast back in 2024.

Plaintiff must allege facts that plausibly show Equifax failed to follow reasonable

procedures to assure maximum possible accuracy of the report as well as facts

showing Equifax failed to reinvestigate the inaccuracies after Plaintiff reported

them.  Any Third Amended Complaint must allege facts supporting any damages

Plaintiff suffered resulting from Equifax's alleged violations.  The filing deadline

is June 22, 2026.

**DONE** and **ORDERED** in Tampa, Florida on May 29, 2026.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**<u>Copies furnished to</u>**:  Plaintiff, *pro se, and* Counsel of record